**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| KATRINA HOLTORF,<br><br>    Plaintiff,<br><br>vs.<br><br>FRATERNAL ORDER OF EAGLES, LOCAL CHAPTER 200 and GRAND AERIE OF THE FRATERNAL ORDER OF EAGLES,<br><br>    Defendant. | 8:11-CV-259<br><br><br>**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

   PLAINTIFF Katrina Holtorf, for her cause of action against the Defendants, states:

**JURISDICTION**

   1.   This action is brought as a sexual discrimination claim and arises under Title VII of the American Civil Rights Act of 1964 (Title VII), as amended and the Nebraska Fair Employment Practice Act (NFEPA), Neb. Rev. Stat. §§ 48-1101 – 1125 et seq.

   2.   The jurisdiction of the Court is invoked pursuant to 42 U.S.C. §2000(e) and 28 U.S.C. §1331, §1332, and §1343(a)(4), which provide for the original jurisdiction of this Court for all civil actions arising under the Constitution, laws or treaties of the United States, and any civil action authorized by law to recover damages or to secure the protection of civil rights.

   3.   The supplemental jurisdiction of this Court is invoked pursuant to Title 28, U.S.C. §1367(a) for jurisdiction over all other claims that are so related to claims in the action which provide original jurisdiction.

   4.   Venue is proper in this Court pursuant to 28 U.S.C. §1391(b).

5. The unlawful employment practices alleged herein occurred in Fremont, Dodge County, Nebraska.

## PARTIES

6. Plaintiff is a female, is a citizen of Nebraska, and resides at 1845 County Road U, Cedar Bluff, Nebraska, 68015.

7. Defendant Fraternal Order of the Eagles, Local Chapter 200 (hereinafter "Local Chapter 200") is a non-profit Nebraska domestic corporation conducting business in Nebraska with a principal place of business in Fremont, Dodge County, Nebraska.

8. Defendant Grand Aerie of the Fraternal Order of Eagles (hereinafter "Grand Aerie") is a non-profit domestic corporation conducting business in Nebraska with a principal place of business in Grove City, Ohio.

9. Defendants are "employers" within the meaning of the statutes or Acts.

10. Defendants are "covered entities" as defined by Title VII and the NFEPA.

## ADMINISTRATIVE PROCEDURES

11. Plaintiff was constructively terminated from employment with the Defendants on or about August 8, 2009. She filed a timely charge of discrimination against Local Chapter 200 with the Nebraska Equal Opportunity Commission on March 5, 2010. An amended charge of discrimination was filed against Local Chapter 200 on or about November 10, 2010.

12. Grand Aerie responded to and participated in the U.S. Equal Employment Opportunity's investigation of Plaintiff's charges of discrimination.

13. On or about November 30, 2010, the EEOC notified "Vince Kinman, Field Service Manager, Fraternal Order of Eagles, 1623 Gateway Circle South, Grove City, Ohio" of Plaintiff's charge of Title VII discrimination. A copy of the Notice is attached hereto and marked as <u>Exhibit A.</u>

14. On or about May 4, 2011, the United States Equal Employment Opportunity Commission issued a "Determination" finding reasonable cause to believe that the Local Chapter 200 had a working environment in which Plaintiff and other females were subjected to sexual harassment, in violation of Title VII. A copy of the determination is attached hereto and marked as <u>Exhibit B.</u>

15. On or about June 20, 2011, Plaintiff received a "Notice of Right to Sue" from the United States Equal Employment Opportunity Commission, entitling Plaintiff to commence this action within 90 days of receipt of the Notice. A copy of the "Notice of Right to Sue" is attached hereto and marked as <u>Exhibit C.</u>

16. Plaintiff filed this action within the 90-day period following receipt of Exhibit C.

17. Pursuant to F.R.C.P. 15(c), this Amended Complaint relates back to the date of the original Complaint.

## STATEMENT OF CLAIM

18. Plaintiff sets forth the allegations of paragraphs 1-17 as if set forth here.

19. Plaintiff was hired by Fraternal Order of Eagles, Local Chapter 200 ("Chapter 200") on or about March 2, 2009 and worked as a bartender.

20. Beginning the first day of her employment, Plaintiff was subjected to unwanted, inappropriate, and unwelcome sexual harassment by her supervisors and coworkers.

21. Specifically, Plaintiff was subjected to unwanted, inappropriate, and unwelcome sexual harassment by her supervisor, Jeff Clark. Mr. Clark was "head trustee" of Chapter 200.

22. On or about March 9, 2009, Plaintiff's first day of employment with Chapter 200, Clark began talking to her about "blow jobs." Clark told Plaintiff there was a rumor that another Chapter 200 employee would give Clark "blow jobs" under his desk; that the rumor was not true; and that if he was going to do something like that "it would be someone with an ass like [Plaintiff's]."

23. Local Chapter 200 lost its status as a chartered Fraternal Order of Eagles chapter on or about March 23, 2009. During this time, Mr. Vince Kinman, Field Service Manager of the Grand Aerie, acted as an agent for Local Chapter 200 and oversaw all business operations at Local Chapter 200, including investigating and responding to workplace harassment claims and hiring and firing of Local Chapter 200 employees.

24. On or about April 18, 2009, while Plaintiff was working, Clark suggested that he take Plaintiff to his home to allow her to change clothes between two events at Chapter 200. Plaintiff declined the invitation.

4

25. On or about April 20, 2009, Clark held a staff meeting which included Plaintiff, Clark, two other women, and one other man. Clark conducted the meeting while wearing a pair of jeans with a large visible hole in the crotch area.

26. On May 1, 2009, while Plaintiff was bartending at a Chapter 200 event and in front of patrons, Clark approached Plaintiff from behind, put his hands on Plaintiff's body, and began rubbing himself against Plaintiff. Clark did this two times that evening. Plaintiff informed Clark this type of behavior was not acceptable and was not welcome.

27. On another occasion after May 1, 2009, while Plaintiff was working at a Chapter 200 event, Clark told Plaintiff that she should have a few drinks and tell her husband that she wouldn't be coming home because she would be staying overnight at Clark's house that evening. Plaintiff advised Clark that this would not be acceptable and would not happen.

28. On another occasion, Plaintiff was standing on a counter in the Chapter 200 kitchen cleaning. Another employee of Chapter 200, Ty Broulliette, commented on the color of Plaintiff's underwear. Other male employees and supervisors were present. Broulliette was Plaintiff's direct supervisor at the time.

29. On several occasions, Scott Matura, accountant for Chapter 200, showed Plaintiff his cellular phone screen, which displayed photos of male genitalia and men and women committing sex acts. Plaintiff would be working behind the bar and Matura would hold his phone in front of Plaintiff. Plaintiff advised Matura that she did not wish to see these photos.

30. In May 2009, Plaintiff told Mike Saxton, bar manager of Chapter 200 and Scott VonSeggern, trustee of Chapter 200, about the unwanted, inappropriate, and unwelcome sexual harassment by Jeff Clark and other Chapter 200 employees. Plaintiff told them that she was humiliated and demeaned by Clark's behavior and by the behavior of Broulliette and Matura and that she felt scared and intimidated in Clark's presence. Saxton responded that he had witnessed Clark behaving in an inappropriate manner toward Plaintiff. Saxton and VonSeggern stated that Clark's behavior was unacceptable and would be addressed immediately.

31. Clark's behavior was not addressed. Plaintiff again approached Saxton and VonSeggern. Saxton and VonSeggern told Plaintiff that she should report Clark's behavior to Mr. Vince Kinman, Membership Director of the Grand Aerie and acting agent for the Local Chapter.

32. Plaintiff spoke with Kinman by telephone in May 2009 and reported the unwanted, inappropriate, and unwelcome sexual harassment by her supervisor, Jeff Clark, and other Chapter 200 employees. Plaintiff told Kinman that she felt uncomfortable working with Clark. Kinman stated that Plaintiff was not the only employee who had complained about Clark; assured Plaintiff that she would no longer have to work with Clark, and assured Plaintiff that Clark would be "fired."

33. Approximately one week after Plaintiff reported the harassment to Kinman, VonSeggern told Plaintiff that he wanted to keep Clark employed as a manager at Chapter 200 because it would be difficult to "find a manager as good

6

as Jeff Clark." He suggested that Plaintiff, VonSeggern, and Clark sit down and "work this all out." Plaintiff became upset and told VonSeggern that she believed she had been sexually assaulted; that Clark's behavior was illegal; and that Plaintiff would be forced to quit her job if Clark was allowed to continue working at Chapter 200.

34. After speaking with VonSeggern, Plaintiff again called Kinman and asked why nothing was being done about Clark's behavior. Kinman stated that he "couldn't do this quickly" and became upset with Plaintiff, telling her that she should "keep her mouth shut" and stop discussing the matter with others.

35. Clark was removed from his office as Head Trustee and placed on a 90-day membership suspension on or about around June 3, 2009. During the time of his alleged suspension, Clark was allowed to attend Chapter 200 events on at least three occasions. On one occasion, Clark came into the area while Plaintiff was working at the bar. Plaintiff's heart began to race and she felt ill when she saw Clark. Plaintiff went into the liquor closet and locked the door behind her, in fear of Clark.

36. Clark's 90-day membership suspension was to end on August 31, 2009. On or about August 8, 2009, Plaintiff was placed on a two-week suspension from her employment, for allegedly failing to lock a cooler.

37. Knowing that Clark was to return to Chapter 200 on September 1, 2009; that she would be subjected to continuing sexual harassment; and that Kinman and the Grand Aerie and VonSeggern were aware of the harassment but did not address it and intended to keep Clark as an employee, Plaintiff concluded

that the conditions had become unbearable for her emotionally and psychologically and would not be corrected by management. Plaintiff had no choice but to resign her employment with Chapter 200, resulting in a constructive discharge on or about August 8, 2009.

38. Within one week of Plaintiff's constructive discharge, Clark returned to employment at Chapter 200.

39. The reasons given by Local Chapter 200 for Plaintiff's two-week suspension from her employment were a pretext for discrimination based on Plaintiff's gender.

40. Plaintiff did not witness Clark, Kinman, or any other Chapter 200 supervisor or employee treat male Chapter 200 employees in the same way she was treated. Clark, Broulliette, and Maturra's behavior was directed at Plaintiff because she is female.

41. At the time of Plaintiff's termination, she was earning an hourly wage of $7.50 per hour plus gratuities.

42. At all times during Plaintiff's employment, her work performance was above average.

43. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered actual compensatory damages, loss of wages, liquidated damages, and loss of future income, the total sum of which will be specifically pleaded when ascertained.

44. As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

## **FIRST CAUSE OF ACTION**

(Title VII Gender Discrimination)

45. Plaintiff incorporates the allegations of paragraphs 1-44 as if set forth here.

46. Plaintiff is a member of a protected class and was subjected to unwelcome, unwanted, and illegal sexual harassment by her superiors in the form of sexual advances, requests for sexual favors, and other verbal and physical conduct of a sexual nature.

47. The sexual harassment was pervasive and constant and created a hostile work environment.

48. The Defendants constructively discharged Plaintiff.

49. The Defendants are vicariously liable for the discriminatory actions of their supervisory personnel, including Kinman, Clark, Broulliette, and Matura.

50. Defendants' actions deprived Plaintiff of equal employment opportunities provided by Title VII of the American Civil Rights Act of 1964 (Title VII), as amended and otherwise adversely affected her status as an employee because of her gender.

51. Defendants' actions were taken willfully and/or with malice and/or with reckless indifference to the state and federally protected rights of Plaintiff.

## SECOND CAUSE OF ACTION

(NFEPA Gender Discrimination)

52. Plaintiff incorporates the allegations of paragraphs 1-51 as if set forth here.

51. The aforementioned facts setting forth a gender discrimination claim violate the Nebraska Fair Employment Practice Act, Neb. Rev. Stat. §§ 48-1101 – 1125 et seq.

52. Plaintiff is a member of a protected class and was subjected to unwelcome and illegal sexual harassment by her superiors in the form of sexual advances, requests for sexual favors, and other verbal and physical conduct of a sexual nature.

53. The sexual harassment was pervasive and constant and created a hostile work environment.

54. Defendants constructively discharged Plaintiff and otherwise discriminated against her because of her gender.

55. Defendants' actions deprived Plaintiff of equal employment opportunities provided by both State and Federal law, cited in paragraph 1, and otherwise adversely affected her status as an employee because of her gender.

56. Defendants' actions were taken willfully and/or with malice and/or with reckless indifference to the state and federally protected rights of Plaintiff.

## THIRD CAUSE OF ACTION

(Constructive Discharge)

57.     Plaintiff incorporates the allegations of paragraphs 1-56 as if set forth here.

58.     The Defendants made Plaintiff's working conditions intolerable.

59.     Plaintiff's gender was a motivating factor in Defendants' actions.

60.     Defendants acted with the intent of forcing Plaintiff to quit her job.

61.     Defendants' actions deprived Plaintiff of equal employment opportunities provided by both State and Federal law, cited in paragraph 1, and otherwise adversely affected her status as an employee because of her gender.

62.     Defendants' actions were taken willfully and/or with malice and/or with reckless indifference to the state and federally protected rights of Plaintiff.

WHEREFORE, Plaintiff prays for:

a.      An award of back pay to compensate her for loss of salary, employment benefits, promotions, and other loss of job opportunities;

b.      Costs and reasonable attorney's fees as allowed;

c.      Prejudgment interest;

d.      Compensatory damages;

e.      Punitive damages; and

f.      For such other future relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues.  Plaintiff requests that such trial be held in Omaha, Nebraska.

KATRINA HOLTORF, Plaintiff


By: s/Michelle D. Epstein
Jason G. Ausman #22261
Michelle D. Epstein #21936
AUSMAN LAW FIRM PC LLO
1015 N. 98th Street, Ste. 102
Omaha, NE 68114
Telephone: 402-933-8140
Facsimile: 402-718-9423
michelle@ausmanlawfirm.com


## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2012, I electronically filed the foregoing with the Court using the CM/ECF system which sent notification of such filing to:

benningtonlaw@gmail.com          s/ Michelle D. Epstein

12