## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KATRINA HOLTORF, | CASE NO. 8:11CV259 |
| Plaintiff, | |
| vs. | MEMORANDUM AND ORDER |
| FRATERNAL ORDER OF EAGLES, LOCAL CHAPTER 200, and GRAND AERIE OF THE FRATERNAL ORDER OF EAGLES, | |
| Defendants. | |

This matter is before the Court on the Motion for Summary Judgment (Filing No. 84) submitted by Defendant Grand Aerie of the Fraternal Order of Eagles ("Grand Aerie"), and the Grand Aerie's Objections to the Plaintiff's Evidence (Filing No. 101). For the reasons that follow, the Objections will be granted in part, and the Motion for Summary Judgment will be granted.

### OBJECTIONS TO PLAINTIFF'S EVIDENCE

First, the Grand Aerie objects to the Court considering evidence presented by Plaintiff Katrina Holtorf that is not properly authenticated or that constitutes inadmissible hearsay.  The Court will grant the Grand Aerie's Objection in this respect, and will not consider any evidentiary materials that have not been properly authenticated or that constitute inadmissible hearsay.

Second, the Grand Aerie objects to statements in Holtorf's affidavit that Grand Aerie contends are inconsistent with her deposition testimony, or that reflect speculation, feelings and perceptions, or legal conclusions.  The Court will grant the Grand Aerie's Objection in this respect, in part, disregarding Holtorf's statements that

reflect speculation or conclusions of law.   The Court will also consider any prior inconsistent statements of Holtorf when determining whether genuine issues of material fact remain for a jury.

Third, the Grand Aerie objects to testimony of Holtorf's co-worker, Debra Sorensen, suggesting that it is inadmissible under Fed. R. Evid. 401 and 403.   The Court will grant the Grand Aerie's Objection in this respect, in part, disregarding statements of Sorensen that are irrelevant.

**FACTS**

Plaintiff Katrina Holtorf's two remaining claims are presented under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), asserting (1) hostile work environment based on sexual harassment, and (2) constructive discharge.

The record before the Court demonstrates that there is no genuine issue as to the following facts:

Holtorf is a female resident of Cedar Bluff, Nebraska.   She was hired by the Fraternal Order of Eagles Local Chapter 200 (the "Local Chapter") on or about March 2, 2009, to work as a bartender, and was supervised by the Local Chapter Trustees, Jeff Clark, Paul Mittura[1], and Scott VonSeggern, as well as the bar manager, Mike Saxton. The Local Chapter's charter as an aerie of the Fraternal Order of Eagles was suspended on or about March 16, 2009, and it has not regained its charter.

On March 9, 2009, Holtorf's first day of work, Clark told her there were rumors that another female employee gave him "blow jobs" after work, but if he was going to do such a thing it would be with someone with an "ass" like Holtorf's.

---

[1] Mittura also served as the accountant for the Local Chapter.

2

On or about April 18, 2009, Holtorf came to work in casual clothes to set up the bar for a special event, bringing her work clothes with her.  She later asked Clark if she had time to change her clothes before the event, and he said he could take her to his house to change her clothes.  She replied that she would change in the restroom.

On or about April 20, 2009, Clark held a staff meeting in his office.  Holtorf and other employees attended the meeting.  Clark put his leg on his desk, revealing a large hole in the crotch of his pants, and he scratched his crotch throughout the meeting.

On May 1, 2009, Holtorf was bartending and helping customers, when Clark grabbed her, pulling her toward him.  He began to rub his body against her back, and she could feel his genitals against her.  Clark repeated the behavior later in the evening.  Holtorf told Clark the behavior was unacceptable and unwelcome.

On another occasion after May 1, 2009, Holtorf was having a drink at the bar after work.  Clark told Holtorf he would buy her another drink, and she should tell her husband she wouldn't be coming home because she would be staying overnight at Clark's house that evening.   Holtorf told Clark what he was suggesting was unacceptable and would not happen.

On another occasion, Holtorf was standing on a counter in the Local Chapter kitchen, cleaning.  She was wearing shorts.  Her immediate supervisor at the time was Ty Broulliette.  He said to her "nice purple panties."  Holtorf complained to Saxton about Broulliette's comment and about Clark's behavior, noting that Clark put his hands on her every time he walked by, making her uncomfortable.   Holtorf also complained to VonSeggern, telling him and Saxton that she felt humiliated and demeaned by Clark's behavior, and she was frightened and intimidated in his presence.

3

On twenty to thirty occasions during Holtorf's employment, Mittura held his cell phone screen in front of Holtorf, displaying photos of male genitalia and men and women engaged in sex acts.  Holtorf told him the images were disgusting and she did not want to see them.

In mid-May 2009, Holtorf told Saxton and VonSeggern she did not want to work with Clark any longer.  They told her to report Clark's behavior to Vince Kinman, the Grand Aerie's Field Service Manager.  A few days later, Holtorf called Kinman and told him she had been assaulted and sexually harassed by Clark and was not comfortable working with him.  Kinman told Holtorf she was not the only employee who complained about Clark and he would be fired.

Within a week of Holtorf's call to Kinman, VonSeggern told her he wanted Clark to continue to work as the Local Chapter manager.  Holtorf told VonSeggern she believed she had been sexually assaulted by Clark, and she would be forced to quit her job if Clark continued to work there.  The next day, Holtorf called Kinman again, telling him she would resign if Clark continued to work at the Local Chapter, because she could not work with someone who sexually harassed and assaulted her.

On June 3, 2009, Kinman called Clark and Clark admitted he asked Local Chapter employees to "suck his dick under the desk."  Kinman removed Clark as a trustee and suspended his membership in the Fraternal Order of Eagles for 90 days

During the time of Clark's suspension, he attended events at the Local Chapter on at least two occasions.  Also during the time of Clark's suspension, Mittura continued to put his cell phone screen in front of Holtorf when she was working, forcing her to see sexually explicit images.

4

Clark's 90-day membership suspension was scheduled to end on August 31, 2009.  On or about August 8, 2009, Holtorf was placed on a two-week suspension from her employment at the Local Chapter, for the stated reason that she had locked, but not latched, a cooler in the bar area.  She received no other discipline during her employment with the Local Chapter, and she perceived that the suspension was imposed in an effort to encourage her to quit her job before Clark returned from his membership suspension.

Knowing that Clark would return as a member of Local Chapter on September 1, 2009, and fearing continued harassment by him, Holtorf telephoned Saxton a few days after August 8, 2009, and resigned her employment.

Holtorf brought this action against the Local Chapter on July 26, 2011.  She filed her Amended Complaint (Filing No. 53) on September 8, 2012, adding the Grand Aerie as a Defendant.

## STANDARD OF REVIEW

"Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  *Gage v. HSM Elec. Prot. Servs., Inc.,* 655 F.3d 821, 825 (8th Cir. 2011) (citing Fed. R. Civ. P. 56(c)).  The court will view "all facts in the light most favorable to the nonmoving party and mak[e] all reasonable inferences in [that party's] favor."  *Schmidt v. Des Moines Pub. Sch.,* 655 F.3d 811, 819 (8th Cir 2011).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in

Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id.* at 325. Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.*

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir.) (quoting *Matsushita*, 475 U.S. at 586-87), *cert. denied*, 132 S. Ct. 513 (2011). "'[T]he mere existence of some alleged factual dispute between the parties'" will not defeat an otherwise properly supported motion for summary judgment. *Quinn v. St. Louis County.*, 653 F.3d 745, 751 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

In other words, in deciding "a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party"– where there is no "'genuine issue for trial'"–summary judgment is appropriate.

6

*Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## DISCUSSION

The Grand Aerie contends Holtorf cannot establish that (1) she timely filed suit against Grand Aerie, (2) Grand Aerie was subject to Title VII[2], (3) she was a Grand Aerie employee, (4) she exhausted her administrative requirements with respect to Grand Aerie, (5) she suffered an adverse action, (6) she was treated less favorably than similarly situated males, or (7) she was subjected to sexual harassment severe enough to affect the terms and conditions of her employment, and Kinman failed to take appropriate remedial action.

Assuming, without deciding, that Holtorf can establish Grand Aerie was her employer, it was subject to Title VII, she was subjected to sex discrimination in the form of sexual harassment, she exhausted her administrative remedies, and she timely filed suit, summary judgment will be granted in favor of Grand Aerie, because it took appropriate remedial action to end the harassment, and because Holtorf's decision to resign involved no "adverse action" by Grand Aerie.

## I.  Hostile Work Environment Based on Sexual Harassment

"Title VII prohibits employers from discriminating against any individual based on sex with respect to their compensation, terms, conditions, or privileges of employment." *Brenneman v. Famous Dave's of America, Inc.*, 507 F.3d 1139, 1143 (8th Cir. 2007) (citing 42 U.S.C. § 2000e-2(a)(1)).  "'Discrimination based on sex that creates a hostile

---

[2] Title VII, at 42 U.S.C. § 2000e(b), excludes from the definition of employer "a bona fide private membership club (other than a labor organization) which is exempt from taxation under section 501(c) of (the Internal Revenue Code of 1954) . . . ."

or abusive working environment violates Title VII.'"  *Id.*  (quoting *Weger v. City of Ladue*, 500 F.3d 710, 718 (8th Cir. 2007)).

"To prove a hostile-work-environment claim, [a plaintiff] must show (1) she was a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; (4) that it 'affected a term, condition, or privilege of employment;' and (5) that her employer knew or should have known of the harassment and failed to take appropriate remedial action."  *Duncan v. County of Dakota, Neb.*, 687 F.3d 955, 959 (8th Cir. 2012) (quoting *Sutherland v. Missouri Dep't of Corr.*, 580 F.3d 748, 751 (8th Cir. 2009)).

Here, Holtorf has demonstrated that she was a member of a protected group, *i.e.*, female; she was subject to unwelcome harassment; and the harassment was based on sex.  The Grand Aerie argues that Holtorf has not demonstrated that the harassment affected a term, condition, or privilege of her employment, nor has she demonstrated that Grand Aerie knew or should have known of the harassment and failed to take appropriate remedial action.

In *Duncan v. General Motors Corp.,* 300 F.3d 928 (8th Cir. 2002), the Eighth Circuit noted that "[t]o clear the high threshold of actionable harm, [a plaintiff] has to show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult.'" 300 F.3d at 934 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

> "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Oncale [v. Sundowner Offshore Servs., Inc.,]* 523 U.S. 75, 81 [1998]. (Internal quotation omitted). Thus, the fourth part of a hostile environment claim includes both objective and subjective components: an environment that a reasonable person would find hostile and one that the victim

8

> actually perceived as abusive. *Harris, [v. Forklift Sys., Inc.,]* 510 U.S. 17, 21 [1993]. In determining whether the conduct is sufficiently severe or pervasive, we look to the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23[.]

*Duncan v. General Motors,* 300 F.3d at 934.

The Court finds that Holtorf has come forward with sufficient evidence to create, at a minimum, genuine issues of material fact as to whether the unwelcome harassment affected a term, condition, or privilege of her employment, *i.e.,* whether a reasonable person would find Clark's and Mittura's conduct hostile or abusive, and whether Holtorf actually perceived it as such.

The Grand Aerie also argues that Holtorf cannot demonstrate that the Grand Aerie knew or should have known of the harassment and failed to take appropriate remedial action. The Grand Aerie refers the Court to the Eighth Circuit's decisions in *Mariwether v. Caraustar Packing Co.*, 326 F.3d 990 (8th Cir. 2003), *McCurdy v. Ark. State Police,* 375 F.3d 762 (8th Cir. 2004), *Tatum v. Ark. Dep't of Health*, 411 F.3d 955 (8th Cir. 2005), and *Green v. Franklin Nat. Bank of Minneapolis,* 459 F.3d 903 (8th Cir. 2006), in support of its argument that Kinman's response was timely and sufficient, as a matter of law.

*Mariwether* and *McCurdy* offer little support for the Grand Aerie's position. In *Mariwether*, the employer immediately investigated the plaintiff's complaint, initially suspending the offending co-worker for two days, and within one week taking further disciplinary and corrective action. 326 F.3d at 994. In *McCurdy*, the employer

9

immediately took steps to investigate the plaintiff's complaint, insulate the plaintiff from further offensive conduct, and take appropriate corrective measures.  375 F.3d at 771.

The Eighth Circuit's decisions in *Tatum* and *Green* do suggest that the Grand Aerie's response to Holtorf's complaints was sufficient as a matter of law.  In *Tatum*, no investigation was begun until two weeks after the plaintiff's complaint, and the investigation took eight weeks to complete.  During the investigation, the plaintiff was required to work in the same office as her alleged harasser.  The Eighth Circuit found that the plaintiff had not shown that her employer failed to complete a prompt and effective investigation, and affirmed the district court's grant of a judgment in favor of the employer as a matter of law.  411 F.3d at 959-60.  In *Green*, the Eighth Circuit affirmed the district court's grant of summary judgment in favor of an employer that terminated an alleged harasser approximately one month after the plaintiff's complaint of harassment.  459 F.3d at 912.  It was unclear how many alleged incidents of harassment occurred between the time of the complaint and the termination.  *Id.* at n.6. The Eighth Circuit noted that the employer "may not have acted in an ideal manner," but its remedial actions "were sufficient."  459 F.3d at 912.  "[C]ases that [plaintiff] cites to support her claim involved situations where the employer waited much longer than one month to terminate the employee.  Therefore, we conclude that the grant of summary judgment on the hostile work environment claim as to [the] harassment was proper because [the employer] took prompt remedial action."  *Id.*

This Court finds that no genuine issues of material fact remain as to whether the Grand Aerie took appropriate remedial action following Holtorf's communication of her complaint to Kinman.  Clark's position as a Trustee, and his supervisory relationship to

Holtorf, were terminated by Kinman approximately two weeks after Holtorf's initial complaint to Kinman.  Although Kinman's investigation and remedial action ideally might have happened sooner, the Grand Aerie is entitled to judgment as a matter of law on Holtorf's claim of hostile work environment discrimination under Title VII, because it took sufficient remedial action in response to her complaints.

## II.  Constructive Discharge

"'Constructive discharge occurs when an employer deliberately renders the employee's working conditions intolerable, thereby forcing her to quit.'"  *Brenneman,* 507 F.3d at 1144 (quoting *Tatum v. Ark. Dep't of Health*, 411 F.3d 955, 960 (8th Cir. 2005)).  "To prove constructive discharge, a plaintiff must demonstrate that: '(1) a reasonable person in her situation would find the working conditions intolerable and (2) the employer . . . intended to force the employee to quit.'"  *Id.* (quoting *Tatum,* 411 F.3d at 960).  The second element is satisfied if the employer reasonably could have "foreseen that the employee would [quit] as a result of its actions.  *Id.* (alteration in original) (quoting *Fenney v. Dakota, Minn. & E. R. Co.*, 327 F.3d 707, 717 (8th Cir. 2003)) (citing *Wright v. Rolette County*, 417 F.3d 879, 886 (8th Cir. 2005)).  "A reasonable employee 'has an obligation not to assume the worst and not to jump to conclusions too quickly.  An employee who quits without giving [her] employer a reasonable chance to work out a problem has not been constructively discharged.'"  *Id.* (quoting *Summit v. S-B Power Tool,* 121 F.3d 416, 421 (8th Cir.1997))  (citing *Duncan v. Gen. Motors Corp.*, 300 F.3d 928, 935 (8th Cir.2002)).

The Grand Aerie argues that Holtorf's resignation was voluntary, and her fear of future harassment by Clark was unfounded.  Holtorf contends that her suspension for

11

failing to latch the cooler was a pretext for sex discrimination, and when Clark's suspension ended, her working conditions would have been intolerable.

Construing the facts in a light most favorable to Holtorf, she has demonstrated that after Clark was removed as a trustee and supervisor, and his membership was suspended, she continued to be subjected to sexual harassment by another supervisor, Mittura.  There is no evidence that Holtorf brought that harassment to the attention of Kinman or anyone else associated with the Grand Aerie, however.  Nor is there any evidence that Kinman or anyone else associated with the Grand Aerie was involved in the decision to suspend Holtorf, or that Holtorf complained to Kinman or anyone else associated with the Grand Aerie about her suspension or about her fear of Clark's return as a member of the Fraternal Order of Eagles.  She gave the Grand Aerie no opportunity to work out the problems, and no reasonable jury could conclude that the Grand Aerie intended to force her to quit, or reasonably could have foreseen that she would quit as a result of its actions or inactions.

Accordingly,

IT IS ORDERED:

1.     Defendant Grand Aerie of the Fraternal Order of Eagles' Objections to Plaintiff's Evidence Offered in Opposition to Defendant's Motion for Summary Judgment (Filing No. 101) are granted in part, as follows:

> The Court has not considered any evidentiary materials that were not properly authenticated or that constituted inadmissible hearsay; the Court has disregarded Holtorf's statements that reflected speculation or conclusions of law; and the Court has disregarded testimony of Debra Sorensen that was irrelevant, and

> The Objections are otherwise denied; and

12

2.      Defendant Grand Aerie of the Fraternal Order of Eagles' Motion for Summary Judgment  (Filing No. 84) is granted.

Dated this 12th day of November, 2013.

BY THE COURT:


s/Laurie Smith Camp
Chief United States District Judge